Our next case of the morning is Proft v. Raoul. Proft v. Raoul The Illinois Election Code generally limits the amount of contributions that an individual and groups may make to, and coordinated expenditures that they may make with, a candidate for office in a given election cycle. But the Code removes the limitations on contributions in a race where a candidate's own self-funding or independent expenditures in the aggregate exceed a threshold amount. $250,000 in a race for statewide office and $100,000 in a state in any other race. When that happens, all individuals and groups may make unlimited expenditures, or unlimited coordinated expenditures, and unlimited contributions. Mr. Schwab, I want to make sure I understand exactly how the Illinois system works. When the contribution cap is lifted, does the state then allow anonymous contributions? I don't know the answer to whether it allows anonymous contributions. I know that the... It may be that this case turns on the answer to that question. Here's why I ask it. As I understand the way an independent expenditure organization works, contributions are anonymous, and the expenses, well, the expenses are whatever they are, because under the First Amendment, they're unlimited. The argument you're making seems to be that our group can accept contributions without identifying the contributors, and then make unlimited contributions to a candidate's fund, the upshot of which is that the donor's identities are now masked. And the Supreme Court has been pretty clear, the Supreme Court of the United States has been pretty clear, that the identities of donors can be required to be made public. So if Illinois requires that to be made public, and what you're seeking is a remedy that allows unlimited anonymous contributions, I think you've got a serious problem. Well, Your Honor, since I don't know the answer to your question, it's hard for me to answer it, to answer that concern. But I will note that the defendants have not raised that issue at all as a defense, and we're at the motion to dismiss stage. So if that is a concern for the defendants, then I think because they haven't raised it, and the court, the district court didn't raise it at all, then that may be something that the parties could litigate below in the district court. This is a question of law, right? Illinois either does or does not require contributors to be identified. We can look this up. Correct. I'm surprised that you haven't. I probably have, and I just hadn't thought about it in the context of this case. So in the context of when the code allows all entities to make contributions, of course, as we've already discussed, there's one exception, and that is that independent expenditure committees may never make contributions to a candidate in a given race, even when the code eliminates the contribution limits for all other donors. Let me ask a question with regard to the consequences of that. If you get the relief that you're seeking, and the independent expenditure committee is able to give in a way similar to an individual or a political action committee could give, what happens with the independence aspect of that independent contribution? Is it still independent, or does it become part of a collusion, part of a joint effort on behalf of an individual, say, to get elected? Well, Your Honor, that was a concern that the district court raised, but in the situation where the code has removed all the contribution limits, there's not really an issue of independence that's necessary, because normally an independent expenditure committee is allowed to be independent because it can make unlimited contributions and raise unlimited funds, but in the situation where there's no contribution limits at all... But is it your position that if your committee, well, if your client makes contributions to Candidate X, it will make expenditures only on behalf of Candidate X? Correct. But it won't make any expenditures on behalf of any other candidate in the race in that election? In that particular race? No, in that election cycle. The reason why I'm worried about this, and perhaps Judge Brennan as well, independent committees are supposed to be independent of all candidates. An independent committee that links up with Candidate A is no longer independent of all candidates. It's certainly not independent of Candidate A, and that would logically mean, it seems to me, that it could no longer make any independent expenditures on behalf of any candidate in any race, because it wouldn't be independent. The relief that we're seeking is precise to only elections where the contribution limits have been lifted, so... Yeah, but I'm trying to figure out the implications of that. If your client concedes that as soon as it makes a contribution to Candidate A, it cannot make any independent expenditures in any other race, you have one position. But if your contention is that you can make unlimited contributions to Candidate A, and unlimited expenditures on behalf of Candidate B, then we've got a coordination problem. And that's why I want to know what your position is. It is that my client could make coordinated expenditures with Candidate A in a race where the contribution limits are lifted. And how about Candidate B? And for Candidate B, if that race has not had the contribution limits lifted, then my client would not be able to make coordinated expenditures with Candidate B, but could make independent expenditures. But unfortunately, it's not independent anymore. Once it's coordinated with Candidate A, it is not independent. That's the whole point of independence. But it is independent with respect to Candidate B, because it's not coordinating... That's kind of like saying that if the Republican National Committee makes contributions to and can make any independent expenditures he wants, that would be a very hard position to sell. The Supreme Court, whatever one thinks about the Supreme Court's campaign jurisprudence, the Supreme Court's been clear that independent committees cannot be coordinated with candidates. And what it sounds like you're saying is we're entitled to coordinate with some candidates and still be independent. Your explanation of the Supreme Court's precedent is correct, but in all of those situations, there were races where the state or the government had contribution limits. In these situations, we have the state eliminating all contribution limits, allowing any donor to make unlimited amounts... in my hypothetical. And let us suppose that entitles your committee to coordinate with Candidate A. The question is, can it coordinate with Candidate A and still be independent with respect to candidates B, C, D, E, and F? I don't see any room in the Supreme Court's jurisprudence for saying that you have a totally independent one. It's independent with respect to those candidates. The Illinois law still prohibits independent expenditure committees from making contributions, for example, to political parties. They're completely prohibited from doing that, and we're not challenging that in this case. So even if Candidate A and Candidate B happen to be in the same political party, we're not asking to make contributions to a political party. So for purposes of these respective races, they're independent. They can only coordinate in a race where the contribution limits have been lifted. This is a unique situation, I think, that Illinois has, where it lifts all the contribution limits, and there are no limits. The reason that the Supreme Court allows independent expenditures, and the reason that anybody would want to make unlimited expenditures, is the fact that you have contribution limits in the first place. Because if there were no contribution limits, there would be no reason for independent expenditure committees. There would be no reason for independent expenditures. If anybody can make unlimited donations to a candidate, then you can make unlimited contributions to a candidate, unlimited coordinated expenditures, unlimited independent expenditures. There would be no reason to distinguish among the different donors. And since the Illinois Election Code, in certain elections, eliminates all of those contribution limits, there's no reason to have that distinction anymore in that particular election. The other reason why it doesn't make any sense, the justifications don't make any sense, is because there's no issue of quid pro quo corruption in these elections. And that's the justification that the Supreme Court has said is the only basis to restrict campaign or political spending. So when the code eliminates... That can't be right, where the whole rule against coordinated contributions and independent expenditures would not be justified. That part of the rule would have to be abolished. Now, I understand you can say the Supreme Court's jurisprudence on this subject has not been entirely coherent, but there it is. We're supposed to be following all of it. Your Honor, you're right. There is other reasons. It's the appearance of corruption. The appearance of corruption is another justification. And then the other justification is the anti-circumvention rationale, which in general allows the government to prohibit independent expenditure committees from making contributions. But the anti-circumvention rationale doesn't apply in a race where there are no contribution limits to circumvent. So the justification that the government has given in this case is based on the anti-circumvention rationale. Look, I hope you've been listening. One of the things apparently being circumvented by your proposal, if accepted, is the requirement that donors be identified. Another thing apparently being circumvented by your proposal is the ban on coordination between candidates in independent expenditure groups. Right? Those two things, the Supreme Court has said, are lawful for states to enforce, whether or not it's sensible for the justices to say that. They have, in fact, said that. And your proposal, what you want, seems to allow end runs around both. I'm wondering how that's doable. I can certainly imagine making an argument to the Supreme Court that its jurisprudence is in need of attention. But we are an inferior court. Well, I don't think, as to your second point about the difference about keeping the independent expenditures committees independent, that I think that under the current Supreme Court jurisprudence where the requirements for restrictions of political contributions are based on the rationale for prevention of quid pro quo corruption, its appearance, or the circumvention rationale, in a situation where there's no contribution limits, then those aspects don't apply. There's got to be some reason. The Supreme Court's case is on independent expenditures. So you're saying that if there's no aggregate maximum contribution limit, the state also can't require identification of the donors? I'm not talking about identification at that point. But I am. I wish this was something. I'm sorry. When I sit down, I'll look it up. But the parties had not addressed this in their briefs at all, and so I'm not prepared right at this exact moment to answer that question. I think it's also important to point out that independent expenditure committees aren't the only ones that can trigger the contribution limit-lifting provision. Any independent expenditures in the aggregate can trigger that provision. So individuals might make independent expenditures, and then that could trigger the limit-lifting provision, allowing unlimited contributions. But those individuals then could make unlimited contributions directly to the canon. Oh, I see it. This is for? That concludes it all. It's all? It is. Okay. I will reserve my time. I'm afraid there is no time to reserve. Mr. Bieschot. May it please the Court. My name is Frank Bieschot, and I represent the Attorney General and the Board of Elections. You perhaps know the answer to my question. Yes, Your Honor. Anonymous contributions are prohibited, but it could theoretically be possible to identify who made a contribution through an IEC, because if you go on the State Board of Elections websites. I'm not asking what's theoretically possible. I'm asking what state law says. When Illinois law lifts the cap on contributions, does it also abrogate the requirement that contributors be identified? No, Your Honor. Okay. And as to the second question, the independence point, as far as I understand plaintiff's argument, it is that in that particular race with candidate A, the IEC would be able to coordinate, but then would continue to be able to make independent expenditures in other races, and that underlies one of the problems with plaintiff's entire argument, is that it wants to pick and choose when it's independent and when it's not. So the independence section, I forget the statute number, and I wasn't able to find it. That independence section, that paragraph within the Illinois Election Code, that does not change. It remains the same, and therefore the consequences of the argument are as you just outlined. Yes, Your Honor.  makes a statement of organization, and in that statement it declares that it exists for the exclusive purpose of making independent expenditures, and that it is able to raise unlimited funds from any source, provided that it does not make contributions to a candidate, PAC, or a political party. So therefore anybody who's making a donation to an IEC knows that those To a what? To an independent expenditure. Please use real words. Yes, Your Honor, I will. You may have private jargon, but we're generalists. Yes, sorry, Your Honor. But any person who makes a donation to an independent expenditure committee will know that those contributions will be used for independent expenditures, because that's what the independent expenditure committee has declared in its statement. So therefore the first amendment burden here is actually fairly modest, because as plaintiffs point out in their reply brief, everybody's a political donor, and the question here is whether when the caps are lifted, those donors must contribute directly to a candidate or can route a contribution through an independent expenditure committee. The election code creates a pretty clear two-way system. Political action committees are able to give contributions. They're subject to limitations on contributions that can be made to them. Is there anything that would prevent a group that's an independent committee in one cycle from becoming a standard political action committee in the next cycle? I don't think so, Your Honor, and there was a little bit of disagreement below about whether somebody could start both a political action committee and an independent expenditure committee. You should think one person would be able to have as many different corporations as he wants. Well, there are some limitations. So, for example, somebody can't open multiple political action committees, because that would provide a way of circumventing the individual. Well, you might have to aggregate contributions. That I understand. Yes, Your Honor. Well, I'm just saying that as it looks to me like Section 5-9-3 allows any committee to change its category any time it wants. So it can raise its hand and say, I'm now declaring I'm a standard political action committee. Correct, Your Honor. And there just needs to be a sufficient level of separation between a standard expenditure committee. You can't be both at once. I understand. Exactly. But you can raise your hand and say, I'm switching. Yes, Your Honor. Okay. That's correct. And getting back to the earlier point about there being no misleading of donors, anybody who gives money to an independent expenditure committee knows that the money is being given for that reason. Anybody who wants to make contributions once the caps have been lifted are entirely free to do so. They can do so directly to the candidate. They can contribute to political action committees up to the limits. And anybody who wants to go the independent expenditure route can continue to make whatever independent expenditures they want. They can contribute to an independent expenditure committee. There's a fairly clear two-track system here that makes it clear to people what they want to do. And it's important to note as well that the independent expenditure committees have fundraising advantages that are unavailable to other groups by virtue of the fact that they have declared that they will not contribute to candidates, PACs, or political action communities, or political parties. And that's very important for the additional reason that if the, that maintaining the ban on contributions by independent expenditure committees serves the purpose of preventing the misuse of that vehicle to lift the caps in the first place. Because independent expenditure committees could otherwise make use of their enhanced fundraising abilities, which were granted as a consequence of their statement that they would not make contributions, to then lift the caps. And then they would have the opportunity to make the contributions that they declared they would not have made in the first place. On that topic, Mr. Ioppola was the Assistant Attorney General who handled the matter in the District Court. Yes, Your Honor. And he offered two hypotheticals to Judge Kendall, and I want to talk a little bit about one of them. Okay. Specifically, I'm on page appendix 40 and 41. So he raises this hypothetical of the rich guy who wanted to give a lot of money, a million dollars to a candidate. And in that hypothetical, which I took to be the status quo, the wealthy individual gives enough to the independent expenditure committee to raise the cap after which the wealthy individual can give to the candidate directly without limits. How does that raise greater concerns than if the wealthy individual gave directly to the independent expenditure committee, which in turn contributed to the candidate? Well, Your Honor, one reason is that it's not just in that particular situation, the concerns may not be as great, but there are also the situations where two or three or four people get paid enough to raise the limits themselves, get together, and then through an independent expenditure committee raise the limits. And then through that accumulation of wealth, they're then able to make contributions that they otherwise would not have been able to. And unlike with the political action committee, which has a wider range of donors as a consequence of the contribution limits to those organizations, the person who's receiving the donation from the independent expenditure committee may be able to identify that small handful of individuals who contributed to the independent expenditure committee, thus raising greater anti-corruption concerns. Because in those situations, the independent expenditure committee that would be able to provide greater donations than an individual would, and you would be able to identify who perhaps was responsible for those. And those anti-corruption rationales that underlie any contribution limits would come into effect in that case. Putting it in a different way, would unlimited contributions by an independent expenditure committee be any more problematic than unlimited contributions by an individual? It sounds to me like you're doing a number argument, that when we get to a certain number, it therefore becomes part of this anti-corruption rationale. What is that number? Well, I mean, I think the difference between the two is that it becomes easier to do that. It's easier for an independent expenditure committee to do that, because it can coordinate with a number of donors and thus raise enough funds to go through the cap lifting procedure. I mean, there is no bar on an individual doing it. That's true. But the problem that the danger that the independent expenditure committee route poses is that it becomes easier to do that. I mean, under Illinois law, they've made the legislative conclusion that they're not going to prevent individuals from making, well, they can't regulate how much anybody makes on an independent expenditure. And they've made the decision that when either candidates sell funding or independent expenditures reach a certain point, that it's in the best interest to open up the contributions for everybody to offset that type of spending. Something in this court recently upheld the cap lifting procedure in Illinois Liberty PAC, noting that it was permissible under the Supreme Court's decision in Davis because it promotes rather than restricts speech, and it applies equally to all candidates. What plaintiffs are arguing here is that the cap lifting provision does not go far enough. They argue that independent expenditure committees, who again have this unlimited fundraising ability by virtue of their statement that they would not make contributions, should be able to make unlimited contributions as well. And again, the danger or the burden on individuals who want to participate with an independent expenditure committee or donate to an independent expenditure committee, they know from the start that any contributions they make to that organization will be used only for independent expenditures because that's what those groups said they would do in their statement of organization. And unless your honors have any further questions, we would ask that you affirm the district court. Thank you very much. The case is taken under advisement. Our third case for argument this morning is